```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF VIRGINIA
                          Alexandria Division

JOHN CHRISTIE, Director of       )
Children and Families, London    )
Borough of Brent,                )
                                 )
      Petitioner,                )
                                 )
v.                               )   1:07cv682
                                 )   UNDER SEAL
NAFISATU WILLIAMS and HARRY      )
WILLIAMS,                        )
                                 )
      Respondents.               )
```

MEMORANDUM OPINION

Petitioner, John Christie, the director of Children and Families for the London Borough of Brent, seeks the return of two minor children to the United Kingdom under the authority of The Hague Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 ("the Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11611.

The Court has conducted an <u>ex parte</u> hearing on the record and carefully considered the documentary evidence, including copies of various Interim Care Orders issued by English judicial authorities. For the reasons stated on the record, and further developed in this Memorandum Opinion, the relief sought by petitioner in the Emergency Verified Petition for Warrant of Arrest in Lieu of Writ of Habeas Corpus will be GRANTED.

I.  FACTUAL BACKGROUND

According to the case synopsis of the High Court of Justice, case number FD06C00593, Nafisatu and Harry Williams, British subjects of Sierra Leone background, are the parents of two minor children, H.W, a daughter born in 1994, and S.W, a son born in 2002.  In 2005, the parents divorced.  Some time in 2004, Mrs. Williams reported to the authorities that Mr. Williams had raped their daughter while the other child was sleeping.  As a result, on November 18, 2004, the children were registered by the London Borough of Brent[1] as victims of sexual and emotional abuse.  Mr. Williams was arrested, charged with allegations of criminal conduct,[2] and released on bail.  The charges appear to be pending.

The synopsis recounts that Mr. Williams visited Mrs. Williams several times after the alleged rape and, around April 3, 2006, allegedly held his family hostage for two days, during which he physically assaulted the daughter and sexually assaulted and raped Mrs. Williams.  Mrs. Williams was thereafter relocated by the Brent authorities, although the location was still near Mr. Williams.  Brent authorities were concerned that Mrs.

---

[1] The synopsis refers to Barnet Family Proceedings Court. We construe "Barnet" to be a typographical error.

[2] The synopsis characterizes the charge as attempted rape, but notes that "there is conclusive DNA evidence linking Mr. Williams to the alleged sexual assault."

2

Williams was unable to protect the children from Mr. Williams and were concerned that she appeared unwilling to press charges against him and might be trying to prevent the daughter from giving evidence against Mr. Williams.

Mrs. Williams and the children missed appointments with the authorities on September 11 and 13, 2006, and she failed to attend a Child Protection Review on September 14, 2006. On September 15, 2006, Mr. Williams produced to the Wood Green Crown Court a letter apparently written by Mrs. Williams, in which she states that she and the children had left the jurisdiction. As of September 29, 2006, the English authorities have understood that Mrs. Williams and the children may be in the United States staying with relatives. On September 29, 2006, an Interim Care Order was issued, placing the children in the care of the London Borough of Brent. Authorities believe Mrs. Williams entered the United States on a three-month visitor's visa (which suggests that she may not be lawfully in the United States at this time).

Mrs. Williams was in contact with the Brent authorities during October 2006, when she was told about the status of the Interim Care Order that had been issued, and she indicated that she wished to return to the United Kingdom. In response, a Location Order was issued, authorizing the Brent authorities to help Mrs. Williams return to the United Kingdom with the children. After that order issued, an English social worker,

Luthando Ndayi, who had been in contact with Mrs. Williams, advised her about the October 25, 2006, Interim Care Order that required her immediate return of the children to the United Kingdom.  According to Mr. Ndayi, Mrs. Williams:

> [B]ecame angry and informed me that she did not appreciate the local authority's involvement stating 'who the hell do you think you are to tell me about my house, my children and my responsibility.  I do not need you in my family affair, you have turned my life upside down and complicated my life.'  Mrs. Williams further stated that she had changed her mind about returning to the United Kingdom and that she will ask family members to screen telephone calls to prevent further contact from the local authority.

<u>See</u> Emergency Verified Petition for Warrant of Arrest in Lieu of Writ of Habeas Corpus, Ex. D, Affidavit of Luthando Ndayi.

As a result of this refusal to return, on November 7, 2006, Mr. Justice Charles approved an order authorizing the London Borough of Brent, the petitioner before us, to take steps to secure the return of the children to the United Kingdom.

## II.   <u>DISCUSSION</u>

The United States and the United Kingdom are signatories to the Hague Convention that was adopted to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access."  The Hague Convention, Preamble, T.I.A.S. No. 11670, 19 I.L.M. 1501, 1501

(1980).

Under the Hague Convention and ICARA, a prima facie case of wrongful removal or retention is established when: (1) the habitual residence of the child immediately before the unlawful removal or retention was in the foreign country; (2) the removal or retention breached petitioner's rights under the law of the foreign country; and (3) the petitioner had custody rights at the time of the removal or retention.  Once petitioner establishes a prima facie case, the child must be promptly returned "unless one of the narrow exceptions" recognized by law applies.  See Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998).  A district court may only consider the merits of the wrongful removal or retention claim, and may not consider the merits of the underlying custody dispute.  Id.

The petition at issue attaches a series of Interim Care Orders, beginning on September 29, 2006, and in effect through July 30, 2007, which order the two children to be "placed in the care of the London Borough of Brent."  Each Care Order explicitly prohibits causing the children "to be known by a new surname" or "removed from the United Kingdom without written consent of every person with parental responsibility for the children or leave of court."

Based on this record, the three requirements for a prima facie case appear to have been satisfied by the petitioner.

5

The children were habitually residing in England before they were removed to the United States, the Borough of Brent is the legal custodian of the children, and those custody rights have been violated by the retention of the children in the United States. Moreover, Mrs. Williams' knowing violation of the Interim Care Order, her efforts to avoid being contacted by the authorities, apparently moving from Maryland to New Jersey and then to Virginia, and her comments to Luthando Ndayi provide probable cause to believe that Mrs. Williams will flee with her children if she receives notice of these proceedings before the children are taken into custody.

ICARA authorizes the district court to "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child[ren] involved or to prevent the child[ren]'s further removal or concealment before the final disposition of the petition."  42 U.S.C. § 11604(a). Accordingly, the Court finds that exigent circumstances exist justifying the Court to authorize the United States Marshal to seize the children without notice to Mrs. Williams and place the children in the appropriate local child protective services agency.

Before any final decision to return the children to the United Kingdom, Mrs. Williams will have an opportunity to be

heard in court.

An appropriate Order will issue with this Memorandum Opinion.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 18th day of July, 2007.

                                                      _____/s/_____
                                                     Leonie M. Brinkema
                                                     United States District Judge

Alexandria, Virginia